IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MENTOR ABI, LLC, d/b/a | § | |
| NEURORESTORATIVE TEXAS | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | Case No. 5:21-CV-50 |
| | § | |
| UNITED HEALTHCARE | § | |
| INSURANCE COMPANY | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Mentor ABI, LLC d/b/a Neurorestorative Texas, Plaintiff herein, and file this Original Complaint, complaining of Defendant, United Healthcare Insurance Company and for cause of action would show the Honorable Court the following:

## I.

## Parties

1.     Plaintiff, Mentor ABI, LLC d/b/a Neurorestorative Texas (hereinafter referred to as "Mentor" or "Plaintiff"), is a licensed Texas health care provider located in Bexar County Texas and that is owned and operated by Mentor ABI, LLC.  Mentor is a Limited Liability Corporation incorporated in Delaware that owns and operates facilities throughout Texas including the Plaintiff in this lawsuit, which is located in San Antonio,

Texas.  Plaintiff's principal place of business is located in Bexar County and San Antonio, which is within the Western District of Texas.

2.      Defendant, United Healthcare Insurance Company, (hereinafter referred to as "UHC") is in the business of providing and/or administering medical and health insurance plans and is licensed to do business in the state of Texas.  Defendant, UHC, is a Connecticut corporation and may be served with process by serving its registered agent for service, CT Corporation System at 1999 Bryan, Suite 900, Dallas, Texas 75201.

## II.

## JURISDICTION AND VENUE

3.      This case is within the subject matter jurisdiction of this Court pursuant to 28 USC § 1332 (diversity of citizenship).  Venue is proper and appropriately established in this Court under 28 USC § 1391(b)(2), as the services provided by the Plaintiff to UHC members was provided in San Antonio, Texas, Defendant conducts a substantial amount of business in this Federal District, and a substantial part of the events, acts or omissions that gave rise to the claims herein occurred in San Antonio and this Federal District.

## III.

## INTRODUCTION AND FACTUAL BACKGROUND

4.      The Plaintiff is a post-acute care, intensive, neurological rehabilitation facility that treats *inter alia* patients with acquired brain injuries.  UHC is in the business

of providing, issuing and/or administering medical and health care coverage to groups and/or individuals including Texas residents.   Plaintiff provides very specialized rehabilitation services to UHC members throughout the state of Texas.

5.     This lawsuit concerns medical claims for services provided to eight (8) patients that had health insurance coverage through a health plan either issued or administered by UHC. For the purpose of the patients' privacy rights, names will not be included in this pleading.   However and attached hereto is a summary of the claims by facility with personal health information withheld and redacted.   Sufficient information has previously been provided to Defendant, such that UHC has been duly notified of the claims made the basis of the suit.   After service of process, additional patient information will be provided to the Defendant for each patient, if necessary.

6.     The patients made the basis of this lawsuit were all admitted to Plaintiff's facility.   For each admission, the patient presented with an insurance card showing that he or she had health coverage under a UHC plan or a plan that was administered by UHC. The Plaintiff contacted UHC prior to or upon each admission to verify coverage and benefits for the specialized services being provided to the UHC members.   UHC represented that each patient had effective coverage for each admission and that benefits were available and adequate for the medical services to be provided.   Furthermore, UHC preauthorized all of the services for each admission.   In reliance and based upon these representations of available and adequate insurance coverage for the authorized services,

the Plaintiff provided valuable services for each admission with the certain expectation of payment.

7.      Currently, UHC and the Plaintiff are party to a preferred provider agreement, and Plaintiff is an in network provider.  However and prior to entering the current preferred provider agreement, the Plaintiff and UHC operated under a mutual agreement that the facility would provide services to UHC members at agreed rates that were referred to as the "Gap Exception" authorization.  Access to the high level of care provided by the Plaintiff and other Mentor facilities in Texas for post-acute neuro rehabilitation is limited geographically and statewide.  As a result, the Plaintiff's facility is often the only provider that is staffed and equipped to provide the necessary level of care required by UHC members (and other Texas patients) that have incurred serious brain injury.  When a UHC member presented to or sought treatment from the Plaintiff, Mentor would contact UHC to ensure that coverage and benefits were available.  Likewise, the Plaintiff would contact UHC to seek Gap Exception authorizations for the necessary care, whether the plan providing coverage was a fully funded individual plan or a self funded group plan.  With that authorization, the parties agreed that the facility would be paid agreed rates for the approved medical care provided to the UHC member.  The agreed rates between UHC and the facilities were based on a *per diem* reimbursement methodology.  Inpatient and transitional services for acquired brain injury ("ABI") services were agreed to be paid at a rate of $975.00 per day.  Outpatient and therapy services for ABI were agreed to be paid at $525.00 per day.  The agreed rates for

these valuable services provided to UHC members were significantly less than the facilities' usual and customary charges. Thus, UHC verified coverage was available for each member, authorized the services to be provided, and the facility provided the care with the certain expectation that the care would be reimbursed and paid as agreed to by UHC.

8.      The Plaintiff provided the authorized medical services to UHC members and submitted the claims to UHC for payment. As reflected on Exhibit 1, UHC has paid nothing or has underpaid as otherwise agreed. Most claims were simply underpaid and the agreed rates for the services were not honored by UHC. Some claims were denied for an alleged lack of authorization or for the claims being "out of network", even though each admission and service was authorized and UHC verified the services would be covered under the agreements between the parties. UHC simply failed to process and pay the preauthorized services under the Gap Exception and the governing rates. Exhibit 1 reflects services provided to UHC members, the billed charges, the contracted amount due and owed, the amount actually paid and the variance due and owed for each claim.

9.      At all times relevant hereto, only UHC was in the position to provide accurate information regarding each of the insured patient's insurance coverage at the time of each admission. The Plaintiff relied on the representations of insurance coverage and authorizations provided by UHC when admitting the patients and providing costly services and with expectation that the claims would be paid by UHC as agreed. Plaintiff

has been damaged as a result of UHC underpaying the claims and/or refusing to pay claims altogether.

10.     At all times relevant hereto, the Plaintiff and UHC entered into agreements that the services provided to UHC members would be reimbursed and paid at the agreed Gap Exception rates.  Thus, Plaintiff agreed to treat UHC members, and UHC in turn agreed that the medical services would be paid in accordance with the terms of the agreement.  Thus, the claim processing, adjudication and payment of the claims made the basis of this lawsuit are expressly governed by agreements or case agreements with UHC, as well as the statutory obligations and requirements set forth in the Texas Insurance Code.

11.     As shown on Exhibit 1, Plaintiff treated eight (8) UHC members and this disputes relates to unpaid or underpaid claims totaling 14 claims.  The total usual and customary charges for all of those services and claims are $178,050.00.  The expected and agreed reimbursement for those services and all claims for this facility provided to these members is $83,200.00.  To date, UHC has paid only $58,203.75.  As a result, the monies that remain due and owed for these claims had UHC paid the claims correctly and timely is $24,996.25.  However and since UHC failed to pay Plaintiff timely and as agreed, Plaintiff seeks the balance of the facility's usual and customary charges in the amount of $119,846.25.

# IV.
## CAUSES OF ACTION

**A)**      **Breach of Contract**

12.     Plaintiff alleges and incorporates herein by reference paragraphs 4 through 11 above.

13.     For the UHC members identified on Exhibit 1, UHC has underpaid and/or failed to pay for the medical services provided as agreed.  UHC is obligated to pay the agreed *per diem* rates for services provided to UHC members.  UHC verified that the services were covered and benefits were available and authorized the services under the parties Gap Exception agreement.  The services were provided with the expectation of payment pursuant to the parties' agreement.  However, UHC has paid nothing or underpaid contrary to the parties' agreement.  As set forth on Exhibit 1 and after all payments and offsets, the claims remain underpaid in the total amount of $24,996.25.  As a result, UHC's acts and omissions constitute a material breach of its contractual obligations and agreement with Plaintiff.  Further and as a result of failing to timely and correctly pay the claims as agreed, UHC has waived any right to the agreed upon discounted and contractual rates.  Therefore, Plaintiff seeks the balance of the facilities' usual and customary charges for each admission in the total amount of $119,846.25.

**B.  Violations of the Texas Insurance Code through Deceptive and Unfair Trade Practices**

14.     Plaintiff alleges and incorporates herein by reference paragraphs 4 through 13 above.

15.     Plaintiff would show it is the accepted business practice in the healthcare industry to contact insurers or plan administrators in order to verify coverage for patients that are being admitted for medical services.  Since coverage and benefit information are entirely within the exclusive control of the plan or its administrator, a provider must rely on representations of coverage by a plan or its agents or administrator, when deciding whether to admit and provide costly medical services to a patient.  The insurance carrier and/or the plan administrator know providers will rely on assertions and representations of coverage and are under a legal duty to reasonably investigate and provide accurate coverage information.

16.     UHC represented to Plaintiff that insurance benefits were available for the medical treatment provided to each of the patients made the basis of this dispute.  Indeed, UHC also expressly agreed to pay *per diem* rates for the level of services provided by Plaintiff.  The Plaintiff provided the necessary medical treatment to each patient in reliance on the assertion and representation of available insurance coverage by UHC and with the certain expectation that the services would be correctly paid as agreed.  Plaintiff and other providers have no way to determine the existence of insurance coverage and

benefits under an insurance policy, except through the plan and/or its administrators. This is precisely why a provider contacts a plan or its agents, as was done in this case. Yet, for some of the admissions and services, UHC has paid nothing at all. For other patients, UHC underpaid for the services. UHC has failed to correctly pay the claims, although UHC verified coverage and represented the services were covered under the plan and that the services were fully authorized under the parties' Gap Exception Agreement.

17. Plaintiff has been damaged due to these misrepresentations of coverage, since the medical services and treatment were provided in reliance on said representations and authorizations of care with the expectation that claims would be paid as agreed. UHC has also failed to pay properly and timely. The total amount due and owed under the parties' agreement is $24,996.25. Likewise and by virtue of the acts and omissions and misrepresentations complained of herein, UHC has waived any right to any discounted or agreed reimbursement rates. Thus, the Plaintiff seeks the balance of its usual and customary charges in the amount of $119,846.25.

18. UHC's conduct in this regard also constitutes deceptive trade practices pursuant to the Texas Insurance Code, §541.001 *et seq*. by *inter alia* misrepresenting the terms of a policy, misrepresenting a material fact or policy provision relating to coverage at issue, making an untrue statement of material fact, and making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact.

Thus, Plaintiff seeks treble damages pursuant to §541.001 *et seq* in the amount of $359,538.75.

### C.     Violations of the Texas Insurance Code

19.     Plaintiff alleges and incorporates herein by reference paragraphs 4 through 18 above.

20.     At all times relevant hereto, Plaintiff and UHC entered agreements whereby the Plaintiff would provide valuable services to UHC members, and UHC would pay the Plaintiff the agreed upon rates.   As a result, Defendant's conduct and omissions in regards to the adjudication and processing of the claims are governed by and in certain violation of the Texas Insurance Code, §1301.101 *et seq.* and/or §843.346 *et seq.*   These sections of the Insurance Code set forth the statutory requirements regarding the prompt payment, processing and adjudication of provider claims.   These statutory provisions also require insurers to provide accurate coverage information to medical providers, such that if an insurer or its agent verifies benefits, payment to the medical care provider may not be denied or reduced for those services.   If the insurer determines that the claim is not payable, the insurer must notify the hospital in writing of the exact reason of the denial within forty-five (45) days.   However and for the claims identified on Exhibit 1, UHC failed to timely and correctly pay the claims and/or notify the Plaintiff that there were any coverage or benefit limitations that would otherwise affect the agreed reimbursement. Rather, UHC verified coverage was available, then denied the claims or underpaid the claims.   UHC is liable for the payment of the medical services provided as a matter of

law.   UHC cannot retract the representations of coverage or otherwise deny or limit agreed payment after the fact.  As a result of the aforementioned violations, the Plaintiff seeks statutory damages as provided by the Texas Insurance Code, including the balance of billed charges in the amount of $119,846.25, attorney's fees and statutory interest.

21.    At all times relevant hereto, Defendant was either the actual health insurance plan or acting as the actual agent or ostensible agent of the respective health plans insuring the patients.  Therefore, UHC is liable for the misrepresentations described above.  Further, UHC is liable pursuant to the Texas Insurance Code, which provides the applicable subchapters govern the plan and entities that contract with an insurer to process claims and issue verifications.

### D.    Negligence and Negligent Misrepresentations

22.    Plaintiff alleges and incorporates herein by reference paragraphs 4 through 21 above.

23.    Plaintiff would show it is the accepted business practice in the healthcare industry to contact insurers or their administrators and verify coverage for patients being admitted.  Since coverage and benefit information is within the exclusive control of the insurer or its administrator, providers must rely on representations of coverage by an insurance carrier or its agents or administrators when deciding to admit a patient. Insurance carriers and/or the plan administrator know a hospital will rely on assertions of coverage and are under a statutory and common law duty to reasonably investigate coverage and provide the hospital with accurate information.

24.     In each of these cases, the Plaintiff contacted UHC and the Defendant verified benefits were available for each UHC member.   Plaintiff provided the preauthorized medical care based on UHC verifying benefits, authorizing the care and representing the claims would be paid as agreed.   Defendant knew or should have known whether there was available coverage upon each admission and whether the claims would or would not be paid as agreed.   Yet, UHC has denied claims altogether or underpaid paid claims.

25.     In each instance complained of, the information provided to Plaintiff by UHC was, (a) supplied in the course of business transactions between the parties; (b) false or materially inaccurate; (c) provided without the exercise of due care or diligence to insure the truth of the information provided; (d) reasonably relied on to its detriment by Plaintiff, and; (e) resulted in pecuniary damages to Plaintiff.

26.     At all times relevant to this action, UHC was acting as the agent of each of its insureds and/or its other clients which secured health insurance or administrative services relating to health plans. As such, UHC was acting as agent for its principal with actual or apparent authority to transact business with third parties, including Plaintiff, on behalf of all such principals, in turn making those principals either contractually or vicariously liable for the acts and/or omissions of UHC.

27.     Defendant has breached its duty to the Plaintiff to provide accurate information in this regard and by failing to pay for the medical services.   As a direct and proximate cause, Plaintiff has been damaged in the aggregate amount of $119,846.25.

Plaintiff also seeks exemplary damages, as a result of the acts and omissions complained of herein, to be determined by the trier of fact.

## V.

## ATTORNEY'S FEES

28.     Plaintiff has presented the claims for payment to Defendant for the above mentioned services rendered to UHC members.  Defendant has failed to tender payment of the just amount owed to Plaintiffs before the expiration of thirty (30) days from the date of demand.  Accordingly, Plaintiff is entitled to reasonable attorney's fees to be determined by the trier of fact pursuant to Tex. Civ. Prac. & Rem. Code § 38.001, *et seq.* as well as Texas Insurance Code §§ 1301.108 and/or 843.343.

## VI.

## JURY DEMAND

29.     Plaintiff demands a trial by jury of all issues and causes of action so triable pursuant to the Federal Rules of Civil Procedure.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer herein, and after a trial on the merits, the Court enter judgment against the Defendant as follows:

1.     Judgment in the amount of $119,846.25, representing the actual damages and economic loss caused by the Defendant;

2.     Treble damages as allowed by the Texas Insurance Code §541.152 in the amount of $359,538.75;

3.     All penalties and interest provided for under the Texas Insurance Code;

4.     Exemplary damages to be determined by the trier of fact;

5.     Pre-judgment and post-judgment interest as allowed under the law;

6.     Attorney's fees to be determined by the trier of fact and costs of court; and

7.     Such other and further relief to which Plaintiff may show itself justly entitled.

Respectfully submitted,

LAW OFFICES OF P. MATTHEW O'NEIL
6514 McNeil Drive
Bldg. 2, Suite 201
Austin, TX 78729
(512) 473-2002 Telephone
(512) 473-2034 Facsimile


By:   /s/  P. Matthew O'Neil
      P. Matthew O'Neil
      State Bar No. 00795955

ATTORNEY FOR PLAINTIFF,
MENTOR ABI, LLC

**EXHIBIT 1**

| | Location | Members Initials | Total Billed Charges | Claim Number | Reimbursment Expected | HC Payment Receive | Underpaid amount | ate of Service Sta | Date of Service End |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Location | Members Initials | Total Billed Charges | Claim Number | Reimbursment Expected | HC Payment Receive | Underpaid amount | ate of Service Sta | Date of Service End |
| 2 | NeuroRestorative-San Antonio | IB | $4,500.00 | 7558048749 | $1,575.00 | $1,500.00 | $75.00 | 10/24/2018 | 10/31/2018 |
| 3 | NeuroRestorative-San Antonio | IB | $15,000.00 | 7558048765 | $5,250.00 | $5,000.00 | $250.00 | 11/1/2018 | 11/30/2018 |
| 4 | NeuroRestorative-San Antonio | IB | $12,000.00 | 7707308777 | $4,200.00 | $4,000.00 | $200.00 | 12/4/2018 | 12/19/2018 |
| 5 | NeuroRestorative-San Antonio | RC | $3,000.00 | 7838334646 | $1,050.00 | $0.00 | $1,050.00 | 4/22/2019 | 4/29/2019 |
| 6 | NeuroRestorative-San Antonio | MD | $4,875.00 | AU68961677 | $2,500.00 | $1,162.50 | $1,337.50 | 6/25/2018 | 6/29/2018 |
| 7 | NeuroRestorative-San Antonio | MD | $18,525.00 | 7299750471 | $9,500.00 | $1,850.00 | $7,650.00 | 7/2/2018 | 7/31/2018 |
| 8 | NeuroRestorative-San Antonio | TF | $4,500.00 | 7737035744 | $2,925.00 | $2,625.00 | $300.00 | 3/29/2019 | 3/31/2019 |
| 9 | NeuroRestorative-San Antonio | TF | $45,000.00 | 7838307804 | $29,250.00 | $26,250.00 | $3,000.00 | 4/1/2019 | 4/30/2019 |
| 10 | NeuroRestorative-San Antonio | EF | $22,500.00 | 7554501157, 7558048740 | $7,875.00 | $7,500.00 | $375.00 | 9/10/2018 | 9/28/2018 |
| 11 | NeuroRestorative-San Antonio | EF | $12,000.00 | 7558048102 | $4,200.00 | $4,000.00 | $200.00 | 10/2/2018 | 10/11/2018 |
| 12 | NeuroRestorative-San Antonio | JH | $9,000.00 | 7686621200 | $3,150.00 | $0.00 | $3,150.00 | 2/18/2019 | 2/26/2019 |
| 13 | NeuroRestorative-San Antonio | JH | $13,500.00 | 7839767171 | $4,725.00 | $0.00 | $4,725.00 | 4/1/2019 | 4/30/2019 |
| 14 | NeuroRestorative-San Antonio | CS | $10,725.00 | 7251626319 | $5,500.00 | $3,753.75 | $1,746.25 | 6/1/2018 | 6/27/2018 |
| 15 | NeuroRestorative-San Antonio | MV | $2,925.00 | 7534624781 | $1,500.00 | $562.50 | $937.50 | 9/5/2018 | 9/7/2018 |
| 16 | | | $178,050.00 | | $83,200.00 | $58,203.75 | $24,996.25 | | |